[Civ. No. 223.   Fourth Appellate District.—March 4, 1930.]

JOHN KIBELE, Respondent, v. AUGUST J. BOMKE et al., Defendants; MADISON ROUMAIN, Appellant.

Fred E. Stivers and O. M. Peabody for Appellant.

Dorris & Henderson for Respondent.

BARNARD, J.—This is an action for wages, claimed to be due the plaintiff. While the complaint sets up four causes of action, this appeal is taken with reference to the first cause alone and the judgment rendered thereon.

The complaint in the first cause of action alleges that within two years last past the defendants became indebted to the plaintiff, for labor performed in connection with drilling certain oil-wells in the county of Kern, in the sum of $1312.   It further alleges that the plaintiff was employed by the defendants at $12 per day, and that the defendants agreed to pay for this work the sum of $1312.   The answer denied each of the allegations of the complaint.  · The court dismissed the action as to one defendant and gave judgment against the defendants Bomke and Roumain.   Defend-

ant Roumain alone has appealed, basing his appeal entirely on the contention that the evidence is not sufficient to support the findings of the trial court, to the effect that said defendant became indebted to the plaintiff, that said defendant had agreed to pay for this work, and that said amount was due to the plaintiff from said defendant.

Appellant admits that he and the other defendants employed the plaintiff to assist in drilling what is known herein as well No. 1. He contends, however, that work on this well was completed in February, 1925; that plaintiff was paid in full up to that time and that thereafter other parties went ahead, attempting to drill what is known as well No. 2. Appellant contends that before well No. 2 was started he notified defendant Bomke that he was through with the proposition, and would go no further. It is contended that Bomke informed the plaintiff of this fact on February 23, 1925. Appellant therefore contends that since he never specially hired the plaintiff, he became responsible to him only through a partnership with the other defendants, in the drilling of well No. 1; and that he is not further liable since that partnership was canceled, and the plaintiff notified of its termination. Appellant relies upon the following evidence: Roumain testified that he never said anything to plaintiff about employment; that he did not promise to pay him; that he dropped out of the partnership in February; that some time in April plaintiff came to him for the purpose of borrowing money to finish well No. 2, and that he then told him that he had quit and had nothing to do with it. Defendant Roumain's daughter testified that, about the 1st of April, at her father's house, she heard her father tell the plaintiff that he had nothing to do with it, and had no interest in it. Defendant Bomke testified that he informed plaintiff on February 23, 1925, that Roumain had refused to put in any more money, or have anything to do with further work on the wells. Reliance is further placed upon the fact that defendant Bomke gave the plaintiff a letter reading as follows:

"April 24, 1925.

"I, August J. Bomke, this day appoint J. A. Kibele, as my lawful agent to act for me in all matters pertaining to my oil land."

Appellant further insists that the plaintiff admitted that said defendant had informed plaintiff that he had no further interest, by making the following answer:

"A. He said that he had no further interest, he wrote an order, a written order in the contract that you gave me this morning here, should be attached to the contract, he gave me a written order to show the Group Ten people that he owned the property that was on the ground, and the written order . . . ," and that plaintiff said this conversation occurred in June, but later admitted it might have been in April. The record, however, shows clearly that the plaintiff testified that he had a conversation with Roumain, at his home, in June, later admitting it might have been as early as April or March, but flatly denied that he had asked Roumain to put money into this proposition, and denied that Roumain had then informed him that he had quit, and had no further interest in the well. On further questioning, the plaintiff then stated that he had had more than one conversation with Roumain, at his home, and told of two others in July and August. While testifying as to the last conversation he had with Roumain, he made the answer above quoted.

The plaintiff testified: "I was employed by Mr. Roumain to drill the property in the Temblor, that was known as the Kerr Permit." Further, that during the same conversation defendant Bomke entered the room and he was employed to work for them, as driller, at $12 per day; that after work stopped on well No. 1 appellant came out to the property and helped step off the location for well No. 2; that he then told plaintiff he had sufficient money on hand to go ahead and complete the work in accordance with his agreement with Mr. Bomke, and that he was to pay for the drilling of so many wells; and that he had the money on hand for at least five wells, and by the time they were in, he would probably drill the other wells. Plaintiff testified that he worked on well No. 2 seven days in March, thirty days in April, thirty-one in May, thirty in June, thirty-one in July and seventeen in August, making a total of 146 days, amounting to $1752; and that he had received a total of $440, leaving a balance of $1312. Plaintiff's son also testified that he heard defendant Roumain tell his father that he was going to

drill more wells, on the occasion when he visited the property when work stopped on well No. 1.

■ Nothing is here presented but a conflict in the evidence. The testimony of the plaintiff that he was employed by the appellant; that he performed the work; that after the work on well No. 1 ceased, the appellant visited the property and assisted in arranging for further work, stating he was to pay for the same; and that plaintiff had three further conversations with him, between that time and August, and that nothing was said about his having withdrawn from the enterprise, until the last conversation some time in August, is sufficient to support the findings complained of, and this evidence was apparently believed by the court. It is true, as argued by appellant, that the final location for well No. 2 was not the one stepped off by the appellant in February, but it was upon the same quarter-section, was a part of the same lease, and nothing appears in the record to show why the change was made, or why appellant should thereby be relieved from responsibility. It is elementary that a judgment cannot be reversed because the evidence is conflicting. (2 Cal. Jur. 921, and cases cited.)

The judgment is affirmed.

Sloane, P. J., and Marks, J., concurred.